### Shelton and others *against* Darling.

THIS was an action of *assumpsit* on a bill of exchange, drawn by *Darling & Chapman,* on the defendant, and accepted by him; the plaintiffs claiming as indorsees. Counts were added, for money lent to the defendant, at his request; for money had and received to the plaintiff's use; and for

*A.* being the agent of *B.,* procured,for the purpose of raising money for his individual use, a bill of exchange to be drawn on him, as agent, which he accepted as agent, and then got it discounted, and appropriated the avails to himself; such acceptance being within the scope of *A.'*s agency, but without the knowledge of *B.* In an action brought by the indorsee of the bill against *A.* in his individual capacity, it was held, that the plaintiff could not recover on the bill, as the acceptance bound *B.* only; nor on the money counts, for he held a written security, valid and uncancelled, on which his remedy must be sought.

*Hartford,*
June, 1818.

Shelton
*v.*
Darling.

money laid out and expended, by the plaintiffs, at the request of the defendant, for his use.

The cause was tried at *New-Haven, January* term 1818, before *Trumbull, Baldwin* and *Hosmer,* Js.

The bill was as follows : " *Noyes Darling,* Esq. agent of the *Commission Company.* Ninety days after date, please to pay to our own order two thousand dollars, value received, and charge to account.   Your obt. sts.

*Darling & Chapman.*"

" Accepted.   *Noyes Darling,* Agent C. C."

The bill was indorsed by *Darling* & *Chapman* to the plaintiffs.   At the time when it was drawn and accepted, the defendant was the agent of the *Commission Company,* duly appointed ; but he procured it to be drawn and indorsed, and accepted it, for his own use and benefit, and not for the use or benefit, nor with the knowledge or consent, of the company.   Immediately after his acceptance, he procured the bill to be discounted by the plaintiffs, and applied the avails to his private use.   *The Commission Company* had been incorporated by the legislature of *New-York,* and was, at the time of this transaction, a body politic.   The act of incorporation and the by-laws of the company were read in evidence, to shew the powers of the defendant as agent. Upon this state of the case, the plaintiffs claimed, first, that the defendant did not, by virtue of his acceptance, bind the *Commission Company,* but himself in his individual capacity ; secondly, that if the *Commission Company* were bound, still the defendant was liable, in his individual capacity, in this action, to refund to the plaintiffs the money, which he had received of them.   The defendant contended, that he, being the agent of the *Commission Company,* lawfully could, and did, by virtue of his acceptance, bind them, and did not bind himself individually ; and that he was not liable, in this action, to refund to the plaintiffs the money which he had received of them, but was accountable only to the *Commission Company.*   The court charged the jury as follows : " In this case, it is agreed, that the defendant was the agent of the *Commission Company ;* and the question is, whether he was a general, or a special agent ?  A general agent is one appointed for the management of the whole, or a particular branch, of the business of his employers.   A special agent is one appointed for some special occasion, or to do some par-

ticular act or acts. The authority of a special agent goes no farther than that with which he is expressly invested. But the authority of a general agent is, upon the subject matter of the agency, as extensive as the power of his principal. If you find that the defendant is the agent of the *Commission Company,* appointed for the general management of the whole business of the company, or of a particular branch, embracing the power of raising money, the company were bound by the bill of exchange, and no action on that bill can be maintained against the defendant ; but your verdict, on the first count, must be in his favour. But if you do not find, that the defendant was, in this manner, the general agent of the company, you will find for the plaintiffs on the first count, with damages. As to the second, third and fourth counts, the court are of opinion, that admitting that the plaintiffs have proved all the facts they claim to have proved, the law implies none of the promises, which they have stated in those counts ; and your verdict on them must be for the defendant." The jury accordingly returned a general verdict for the defendant ; and the plaintiffs moved for a new trial on the ground of a misdirection.

*Daggett* and *N. Smith* argued in support of the motion. They referred, in the course of their arguments, to *Cary* v. *Webster,* 1 *Stra.* 480. *Sadler* v. *Evans,* 4 *Burr.* 1984. *Buller* v. *Harrison, Cowp.* 565. *Perkins* v. *Smith,* 1 *Wils.* 328. *Waring & al.* v. *Favenck & al.* 1 *Campb.* 85. *Kymer & al.* v. *Suwercropp,* 1 *Campb.* 109.

*Staples* and *L. E. Wales,* contra, cited *The Manhattan Company* v. *Lydig,* 4 *Johns. Rep.* 377.

SWIFT, Ch. J. It appears in this case, that the defendant, as agent for the *Commission Company,* accepted a bill of exchange, for an object apparently within the scope of his agency, by which he rendered the company liable on his acceptance. The plaintiffs, indorsees of the bill, have brought this action against the defendant, in his personal capacity, and claim that they have a right to recover of him, on the ground that he procured the bill to be discounted by the plaintiffs, on his private account, and not for the *Commission Company,* and that he has received and applied the money to

*Hartford,*
June, 1818.

Shelton
*v.*
Darling.

his own use, without their knowledge or consent. There is no charge of fraud, or allegation of insolvency, to vary the claims of the parties. Whether a party to a contract made by an agent, in the name of his principal, so as to bind him, but actually made for the benefit of the agent, may, in certain cases waive his claim on the principal, and bring his action against the agent, as upon his personal contract, is a question not now necessary to consider or decide : for there are other objections decisive of this action. The plaintiffs now hold a bill of exchange, uncancelled, against the *Commission Company,* of sufficient ability to pay it, accepted by the defendant as their agent, so as to be obligatory upon them, and to whom he is accountable for the money received ; by which instrument it is in the power of the plaintiffs to recover of the *Commission Company,* the same money for which this action was brought. While a party holds an instrument as a security for his debt, he cannot resort to the action of *indebitatus assumpsit,* for money had and received ; for the express written contract, extinguishes the implied one : and the plaintiffs are as much precluded from bringing this action against the defendant, as against the *Commission Company ;* for they hold a valid instrument to secure the money which they seek to recover in this action. The plaintiffs, then, cannot be entitled to recover on either of the *indebitatus* counts. They cannot recover on the count for the bill of exchange ; for that was never accepted by the defendant in his private capacity, but as agent for the *Commission Company,* so as to be binding on them.

In this opinion, TRUMBULL, EDMOND, SMITH, BRAINARD, PETERS and CHAPMAN, Js. severally concurred.

HOSMER, J. *William S. Darling* and *Lebbeus Chapman* drew a bill at ninety days, payable to their order, on *Noyes Darling,* as agent to the *Commission Company.* The bill was drawn at the request of *Noyes Darling,* and was accepted by him, as agent of said company. The sum for which it was drawn he received. It is admitted, that he was the general agent of the company ; and it is not denied, that he was authorized to raise money to effectuate the purposes of his agency. The bill of exchange has long since fallen due, has never been paid, and is held by the plaintiffs as the indorsees

of it. They now bring their action against the defendant, to recover of him the consideration of it, paid by *Darling* and *Chapman.*

The fundamental enquiry in this case is, whether the *Commission Company* is bound by the acceptance of the bill? It is admitted, that the act of *Noyes Darling,* their general agent, in accepting the bill, is obligatory upon them. On this point, no question has been made; and therefore, I shall take it for granted. The bill, not being waste paper, but in legal force binding the company, being retained by the plaintiffs as a valid claim, on what ground can the consideration money be recovered back, by any person? More particularly, what demand for the money can exist in favour of the plaintiffs, who never paid it to the defendant, and whose only right is derived through the medium of the bill of exchange? So long as they possess a valid contract against the *Commission Company,* a contract that was originally good, and which remains the subject of a legal suit; there is no foundation for *Chapman* and *Darling* to demand the consideration money paid by them; much less for the plaintiffs, who never had any claim to the money for which they sue. The same remark would be just, if the bill of exchange had never obliged the company. In that event, it would be obligatory on the defendant. *White & al.* v. *Skinner,* 13 *Johns. Rep.* 307. *Burnett* v. *Kensington,* 7 *Term Rep.* 207. *Clement* v. *Brush,* 3 *Johns. Cas.* 180. *Green & al.* v. *Beals & al.* 2 *Caines* 254. *Appleton* v. *Binks,* 5 *East* 148. *Mauri* v. *Heffernan,* 13 *Johns. Rep.* 58.

It is asserted by the plaintiffs, and on this they rest their claim, that the defendant raised the money demanded for himself, having meditated a fraud on the *Commission Company;* and that he has failed to account for it with his principals. To this observation the most satisfactory reply can be made.

In the first place, the affirmation is utterly inadmissible. The defendant, as agent to the *Commission Company,* has a right to account with them, by the production of his books under oath. It never, then, can be assumed, in the present action, where this testimony is shut out, that the money has not been faithfully applied to the use of the *Commission Company.* It would be an unwarrantable perversion of a suit founded in the equity of the plaintiffs' case, to permit a re-

*Hartford,*
June, 1818.

Shelton
*v.*
Darling.

covery on the foundation of facts, which the defendant cannot, by any legal possibility, be prepared to investigate.

Let it, however, be admitted, that the defendant has practised a fraud on his employers, no fraud has been practised on the plaintiffs. They hold a valid security, pursuant to the contract of the original parties ; and they elect to hold it. They have all the advantages which the agreement contemplated, and have suffered no imaginable damage. I do not admit, if an agent conduct *mala fide,* to the disadvantage of his principals, that he is not to be regarded as agent. The principal is often subjected to the contracts of his general agent, where he has transcended the authority actually given. *Fenn v. Harrison,* 3 *Term Rep.* 760.

It has been said, that the defendant not having paid the money received by him, to the *Commission Company,* the party paying has his election to sue the company, or to recover back the money of the defendant. The assertion is utterly unfounded. It is not true, as seems to have been supposed by a learned judge at *nisi prius,(a)* that " till the money is paid over, the servant receives it to the payor's use." On the contrary, it has been correctly decided, that " the payment of money to an agent, is, in law, *eo instanti,* a payment to the principal." *The Duke of Norfolk v. Worthy,* 1 *Campb.* 339. *Passmore v. Mott,* 2 *Binney* 201. The assertion, at any rate, is inapplicable to this case. The plaintiffs were not the *party paying* the money ; and the bill still retained by them in plenary force, precludes all claim for the consideration advanced for it.

I am clear, that a new trial ought not to be granted.

GOULD, J. The question, how far agents may, under circumstances, be personally liable to refund monies, received in the regular course of their employment, does not arise upon the present motion. Assuming, as for the purpose of the present argument we must, the facts, upon which the defendant relied, at the trial, this is not a case in which the plaintiff has, either rightfully, or wrongfully, received money *for his principals ;* but one, in which he has obtained it *for himself,* by acting in their name, but not *for* them— and by thus deceiving the plaintiffs, on the one hand, and violating, on the other, the confidence reposed in him, by

(a) Sir *John Pratt,* Ch. J. in *Cary v. Webster,* 1 *Stra.* 480.

those, for whom he professed to act. And the claim of the plaintiffs is, not that the defendant has received from them, for the use of the *Commission Company*, a sum of money, which he has neglected to pay over, or account for ; but, that he has, by misrepresentation, and under the false pretence of acting for the company, obtained the money, for *his own* use, and now holds it of his own wrong.

But it is contended, that the plaintiffs cannot recover against him, upon this ground ; in as much, as they accepted from him, at the time of advancing the money, a valid and sufficient security against the company. For as the defendant was the general agent of the company, and as *they,* therefore, cannot deny his authority to accept the bill, on their account, as against the plaintiffs, who are *bona fide* holders, it seems to be inferred, that the plaintiffs cannot deny it, as against the *defendant himself :* that is, that he may protect himself against their claim under the very authority, which he has abused—the very trust, which he has violated. But the defendant, as between the company and himself, had, confessedly, no authority to use their name, for his own private benefit : and therefore, though he had, as between the *plaintiffs and the company*, legal authority to bind the latter, by accepting the bill in question ; yet, in point of fact, he could not *rightfully* do it. And what I deem to be the fallacy of the reasoning in his favour; consists in not properly distinguishing between the relative situations and rights of the different parties concerned in the transaction. A man, clothed with a general authority to contract for others, may, by professing to act in pursuance of that authority, when he, in fact, does not, bind them, in favour of third persons, who confide in his professions. But it would seem to me, a reproach to the law, to hold, that he may thus acquire any right, or exemption from liability, *for himself.* Now, if the defendant had possessed *no* authority to bind the *Commission Company*, in any case ; he would, doubtless, have been personally liable to the plaintiffs, in the present instance, for the money, he obtained from them. If, then, as we are now assuming, he actually obtained it, *not* for the company, but for *himself*—by wantonly transcending his rightful authority, and violating his trust ; he surely ought, upon principles of natural justice, and, as I conceive, of law also, to be subjected, as if he had had *no authority, at all.* And

though, if the company had required him to account with them, for the money, as having been obtained, in their name, and upon their credit, *he* might have been precluded, by his own act, from denying it to be theirs : yet, if in the event of its having been lost, or stolen, or destroyed, he had charged it over to them, as their property ; *they*, most certainly, might have defeated the charge, by showing the true state of the facts, as the plaintiffs now claim them to be.

What reason is there, then, why the *plaintiffs* may not also avail themselves of those facts, in the present action ? At the time of discounting the bill, the defendant led them to believe, that they were advancing money to the *Commission Company*, upon the company's application, and voluntary security. They now find, that through a deception practised upon them, by the defendant, they have, in reality, advanced it to *him, in his individual capacity*—upon a security, which, though valid in law, was surreptitiously, and dishonestly, furnished by him, against the company. And they have a right, I think, to say, " We never *consented* to advance our money to this defendant, nor to accept a security, thus unjustly obtained."

It is admitted, that the *Commission Company* are liable, upon the acceptance, made in their name : but at *whose election* are they to be subjected ? The *plaintiffs* may, undoubtedly recover against them : but can the defendant, who created this liability, by a breach of trust, *oblige* the plaintiffs to resort to the company, whose confidence he has abused, and to rely upon a remedy, which he has furnished, by practising a deception upon one party, and a fraud upon the other ? I think not. If one, who has stolen a bank-note, or a bill of exchange, transferable by delivery, passes it to a *bona fide* receiver ; the latter has a complete and effectual remedy, against the bank, in the one case, and the prior parties to the bill, in the other. But is it, therefore, to be concluded, that the holder, upon discovering the fraud—(a fraud, committed, not upon *himself*, but upon the former owner of the note, or bill,) cannot recover back from the thief, the consideration of the transfer ? If goods stolen are sold, by the thief, in market-overt ; the honest purchaser has what is even better than a mere remedy, or right of action, against any one : he has the *legal title* to the goods, and may hold them against all prior claims of ownership. But it will

hardly be contended, that he cannot recover back from the seller, the consideration paid for the goods. Indeed, I regard it as a sound general position, that no one can claim, or defend, under a contract made by himself, for the purpose of defrauding third persons. It appears to me, therefore, that the conclusion drawn in favour of the defendant, from the liability of the company upon the bill, is unfounded.

It has been suggested, that however the case might otherwise be—the circumstance, that the security, accepted by the plaintiffs, was *written,* must, at any rate, preclude them from recovering, in the present action. But that circumstance can, surely, make no difference in the case. Indeed, it is a point, settled by authority, that if one party to a contract has, by fraudulent representations, been induced to give credit, upon the *written* security of the other, or of a third person ; he may, upon discovering the fraud, waive the security, and even before the term of credit has expired, maintain an action against the fraudulent party, either upon the original consideration, or to recover back what he has advanced—according to the nature of the case. *Hogan* v. *Shee,* 2 *Esp.* 522. *Wilson* v. *Force,* 6 *Johns. Rep.* 110.

But it is strongly urged, that, as the plaintiffs have all the security, they expected, and have sustained no damage ; they have no right to recover, in this action. If this were an action on the case for *fraud*—in which actual damage is essential to a right of recovery—the objection might be material ; but it does not apply to the case now before the court. This action is not brought for damage, sustained by the plaintiffs, through fraud, or by the breach of any express contract ; but in *disaffirmance* of a discount, fraudulently obtained, by the defendant, under a false pretence, and in fraud of other persons. In the case, already alluded to, of a bank-note, or a bill of exchange, stolen and transferred to a *bona fide* receiver, he is not disappointed, in what he expected to receive : he has all the security, he desired ; that security is an effectual one ; and he sustains no damage, by parting with property in exchange for it. But it appears to be admitted, that he may, nevertheless, recover back the consideration of the transfer. And as a contract in fraud of third persons, is utterly corrupt and illegal, as to those parties to it, who are privy to the fraud ; I take the rule to be, that no *such* party can avail himself of it, as a ground, either

*Hartford,*
June, 1818.

Shelton
*v.*
Darling.

of claim, or protection, against an innocent party. Upon this principle, the defendant can take no advantage of the form of the transaction, out of which this suit has arisen. The money advanced to him, he obtained, upon a consideration, which, upon his part, was altogether *vicious and illegal.* And if he can protect himself, in this action, under the liability of the *Commission Company ;* the plaintiffs will, in justice to themselves, be constrained to resort to the company for payment : and thus the very fraud, which the rule relating to such transactions is intended to prevent, will be effected. In answer, then, to the enquiry, what *actual injury* have the plaintiffs sustained ? I observe, that they complain of no such injury : but that the defendant has, by dishonest and unlawful means, obtained from them, a sum of money, which he cannot, in conscience, retain. And it is material to add, that a recovery, in this action, would restore all parties to the situation, to which both law and justice require, that they should be restored—*i. e.* the same situation, in which they were, before this corrupt transaction took place.

It is still insisted, however, that the money received by the defendant, is the property of the *Commission Company ;* and that he cannot be deprived of the privilege of accounting with them, for it, upon his own oath. The latter branch of this objection is a mere conclusion from the former, and requires, of course, no distinct answer. But how can the defendant be permitted to object, that the money is the company's property, under the admission, upon which the whole argument proceeds, that he obtained it exclusively for *himself,* and appropriated it to *his own sole use ?* It is impossible. It is to no purpose, to say, that if the *company* were now claiming from him, an account of the money, as their property, he would be estopped to deny their claim. The same thing might be said, if, at the time of obtaining the money, in their name, he had *never* been their agent, for any purpose. And what seems decisive against the objection, is, that if the company should be compelled to pay the bill ; they might, undoubtedly, recover the amount back from the defendant, as money, paid by them, to *his use.*

The suggestion, that if the company should claim the money, against the defendant, as theirs, a recovery against him, in the present action, would not bar their claim, is manifestly groundless. By prosecuting such a claim, they

would, necessarily, recognize his agency, in accepting the bill, and sanction the act as their own. And it is good accounting, by an agent, to show, that the funds of his principal have been taken out of his hands, either justly or unjustly, by order of law. Indeed, if this objection could prevail, it would defeat every action, brought to recover back money from an agent, who had obtained it, by extortion, violence, or any species of illegality, under pretence of acting for his principal.

Private justice, public policy, and the interests of morality, obviously require, that a recovery should be had, in all cases like the present, against the fraudulent party. No one could justly complain of such a result; for no one could be injured by it. And in my judgment, the legal principles, to which I have adverted, would fully justify it. I am, therefore of opinion, that the jury were misdirected, and that the plaintiffs are entitled to a new trial.

New trial not to be granted.