## HOVEY *against* MAGILL.

THIS was an action on a promissory note, wherein the plaintiff declared, that the defendant, by the name of *Arthur W. Magill,* agent for the *Middletown Manufacturing Company,* in and by a certain writing or note, under his hand, and by him well executed, dated the 18th day of *August* 1815, promised the plaintiff, sixty days from date, to pay to him, for value received, the sum of 300 dollars, in *New-York* money ; making a profert of the note, and alleging a breach.

The note read on oyer was as follows : " Sixty days from date, I promise to pay *William Hovey* the sum of three hundred dollars, in *New-York* money, for value received. *Middletown, August* 18th, 1815.        *Arthur W. Magill,*

Agent for the *Middletown Manufacturing Company.*"

On the trial, at *Middletown, July* term 1818, before *Swift,* Ch. J. and *Brainard* and *Chapman,* Js., the defendant admitted the making and signing of the note, in the manner stated ; but claimed, that he was not personally liable. In support of this claim, the defendant proved, by a duly authenticated copy of a vote of the company, passed on the 29th of *March* 1811, that he was, at that time, appointed the agent for transacting the business of the *Middletown Manufacturing Company ;*" and by sundry competent witnesses, that he had ever since acted as agent for the company, and that he had been in the constant practice of signing notes, in the same manner, with the knowledge of the company, which had been regularly paid. This being the only evidence offered by the defendant, the plaintiff contended, that it did not prove an authority to bind the company, by his signature as agent. The court, to whom the issue had been referred, decided, that such evidence was sufficient to prove an authority to bind the company, by his signature as agent ; and therefore, found the issue, and gave judgment, in his favour. The plaintiff moved for a new trial, on the ground, that this decision was erroneous ; and the court reserved the motion.

*Staples* and *Hotchkiss,* in support of the motion, contended, that the defendant, by the note in question, had bound himself personally. Where one has an authority to do an act

as an agent or attorney, he ought to do it *in the name* of him who gives the authority. *Combes'* case, 9 *Co.* 76 *b.* 77 *a.* *Frontin* v. *Small,* 2 *Ld. Raym.* 1418. *Mayhew & al.* v. *Prince,* 11 *Mass. Rep.* 54. *Stackpole* v. *Arnold,* 11 *Mass. Rep.* 27. The undertaking in this note is in the name of *Arthur W. Magill* ; the phraseology in the body of the instrument, " I promise," &c., is the most apt and adequate that possibly could be chosen, to denote an individual liability ; and the addition of " agent" to the signature, is merely descriptive of his character. *Thomas & al.* v. *Bishop,* 2 *Stra.* 955. *Talbot* v. *Godbolt, Yelv.* 137. *M'Williams* v. *Willis,* 1 *Wash. Rep.* 199. *Cullen* v. The Duke of *Queensbury & al.,* 1 *Bro. Ch. Ca.* 101. *Thacher & al.* v. *Dinsmore,* 5 *Mass. Rep.* 299. *Forster* v. *Fuller,* 6 *Mass. Rep.* 58. *Buffum* v. *Chadwick,* 8 *Mass. Rep.* 103.

If an agent make an absolute engagement to perform personally, he may be sued upon such an engagement ; and that although he may be a *public* agent. 1 *Com. Contr.* 251. *Appleton* v. *Binks,* 5 *East,* 148. *Tippets* v. *Walker & al.* 4 *Mass. Rep.* 595. *Sheffield* v. *Watson,* 3 *Caines,* 69. *Gill* v. *Brown,* 12 *Johns. Rep.* 385. 388.

The engagements of agents have been held to bind them personally in two classes of cases : First, where the engagement is, in form, the engagement of the principal, but the agent has not the authority. *Sumner* v. *Williams,* 8 *Mass. Rep.* 162. *White* v. *Skinner,* 13 *Johns. Rep.* 307. *Tippets* v. *Walker & al.* 4 *Mass. Rep.* 595. *Johnson* v. *Ogilby,* 3. *P. Wms.* 279. Secondly, where it is, in form, the engagement of the agent, although executed in behalf of the principal, and with authority. *Appleton* v. *Binks,* 5 *East,* 148. *Talbot* v. *Godbolt, Yelv.* 137. *Mayhew & al.* v. *Prince,* 11 *Mass. Rep.* 54. *Stackpole* v. *Arnold,* 11 *Mass. Rep.* 27. The case before the court clearly belongs to the latter class.

*Whittelsey,* contra, contended, that the law required no particular form of expression, in order to make the contract of a corporation, entered into by its authorized agent, binding upon the corporation ; that if it appeared from the face of the instrument, and the circumstances of the case, that the person contracting, acted, not on his own account, but as the agent of a corporation, with authority so to act, the corporation would be bound ; and that it *did* appear, in this

*New-Haven,*
November,
1818.

Hovey
*v.*
Magill.

case, from the face of the instrument, that the defendant acted as " agent of the *Middletown Manufacturing Company,*" and from the facts found in the motion, that he was, as he claimed to be, the authorized agent of the company, having, for a long time, acted as such, and having been in the constant habit of signing notes in this manner, with the knowledge of the company, which had been regularly paid. He cited *Shelton & al.* v. *Darling,* 2 *Conn. Rep.* 435. *Wilks & al.* v. *Back,* 2 *East* 142. *Hodgson* v. *Dexter,* 1 *Cranch* 345. 365. *Walker* v. *Swartwout,* 12 *Johns. Rep.* 444. 448. *Odiorne & al.* v. *Maxcy & al.* 13 *Mass. Rep.* 178. *Frost* v. *Wood,* 2 *Conn. Rep.* 23. *Rex* v. *Bigg,* 3 *P. Wms.* 422. *Bulkley & al.* v. *The Derby Fishing Company,* 2 *Conn. Rep.* 252. S. P. *Witte* v. *The Derby Fishing Company,* 2 *Conn. Rep.* 260. On the same principle, where the promise is made *to* the agent, he cannot, but the company must, bring the action. *Gilmore* v. *Pope,* 5 *Mass. Rep.* 491.

SWIFT, Ch. J. In this case, it is conceded, that the defendant was agent for the *Middletown Manufacturing Company;* that he had power to bind them ; and that this contract was made for their use and benefit. It is also agreed, that an agent can make himself personally liable on a contract for his principal. So that the question is, whether the signature of the defendant, " *Arthur W. Magill,* agent of the *Middletown Manufacturing Company,*" is obligatory on the company, or on himself.

When an agent, duly authorized, subscribes an engagement, in such manner as to manifest an intent not to bind himself, but to bind the principal ; and when, by his subscription, he has actually bound the principal ; then it is clear, that the contract cannot be binding on him personally. It will be agreed, that no precise form of words is required to be used in the signature ; that every word must have an effect, if possible ; and that the intention must be collected from the whole instrument taken together.

Who can entertain a doubt, upon reading the note in question, that it was the intent of the defendant to bind the company, and not himself ? It is, however, said, that he has made use of the expression " I promise," which is, in terms, a personal undertaking : but he has qualified it, by adding his character of agent, which unequivocally shews, that he

*New-Haven,*
November,
1818.

Hovey
*v.*
Magill.

did not mean to bind himself. Again : it is said, he might have added this merely to distinguish the company from his private concerns. This is a far-fetched supposition, indeed. If such had been the object, it could much more effectually have been answered, by a proper mode of keeping his accounts. I can see no good reason for the addition of " agent," but to render the note obligatory on the company, and exclude all idea of individual liability. This is the plain language of the transaction ; and we ought to give it the obvious meaning, and not entrap men by the mere form of words. This mode of signing the note will fairly admit of this construction : I, as agent of the company, pledge their credit, or give their promise, to pay the note ; or, the company, by me as their agent, promise to pay it.

But if we consider the word agent as merely *descriptio personæ,* we give it no operation, and really expunge it from the writing. We are bound, however, to give effect to every word, if possible ; and the only way to give this word any effect, is, to make the note binding on the company.

The case of *Hodgson* v. *Dexter,* 1 *Cranch* 345. is, in all respects, *ad idem.* There, the contract was made by " *Samuel Dexter,* Secretary of War." He bound himself, and his successors, and subscribed the instrument by his own proper name, without any addition. The court decided, that as it appeared from the whole face of the agreement, it was made entirely on public account, and not for the private advantage of the defendant, it was not binding on him. But here was a signing in his private character ; yet it appearing from the body of the instrument, that it was on public account, the defendant was held not responsible. So in the present case, though the defendant uses the expression " I promise," which would import a personal engagement ; yet when it is coupled with the declaration, that he acts as " agent for the *Middletown Manufacturing Company,*" the meaning of it is qualified, and explained, to constitute a contract binding on that company.

The case of *Shelton & Parrot* v. *Darling,* in this court, recognizes the same principle. That was a bill of exchange drawn on " *Noyes Darling,* agent of the *Commission Company ;*" and he accepted it, by the signature of " *Noyes Darling,* agent *C. C.*" This question, it is true, was not made ; but it fairly arose upon the record ; for *accepted* is the same as

*I accept,* and as much imports a personal undertaking, as *I promise.* This point would have been decisive in favour of the plaintiff; but it escaped the attention of the counsel and the court. This would be strange, if they had not all considered, that such an acceptance did not imply a personal liability.

TRUMBULL, EDMOND, BRAINARD, and PETERS, Js. were of the same opinion.

SMITH, J. I do not imagine there can be any doubt but that an agent of a company may receive property for its use and benefit, and so contract in writing as to pledge his individual responsibility, or that of the company, or both, as the parties shall mutually stipulate. A correct decision, in this case, will not, therefore, depend so much on solving any doubtful point of law, as on discovering the real intent and meaning of the parties. When I look at this contract, I cannot imagine words more appropriate to create a personal liability than I there find. What can be more effectual for this purpose than the words " *I promise to pay* ;" and his being agent to a company makes no difference with the nature and terms of the promise : it is, nevertheless, according to the obvious import of the language, *his* promise to pay. I apprehend, that no person could receive a note drawn in this manner, without understanding, that he had the individual promise of the agent, and might rely on his responsibility. And I apprehend, it is agreeable to the common course of business for persons who deal with an agent of a manufacturing company, to take their contracts with a view to the personal responsibility of the agent. People at large are not supposed to be acquainted with the precise state of the pecuniary concerns of a manufacturing company, or the amount of its funds ; and, of course, would feel unsafe to part with property, without the personal security of the agent. On the other hand, the agent, who is supposed to be fully acquainted with all its concerns, cannot refuse to give his individual security, without destroying all confidence in its responsibility. Hence, the practice of drawing and signing contracts like the one under consideration, which, while it contains a direct personal obligation, on the part of the agent, contains also evidence, that he pledges his person-

al security for and on account of the company—a practice no less dictated by necessity than propriety. And hence, the practice, also, of the company's paying off notes so drawn, and so signed. The court on the circuit seem to have proceeded on the ground, that a liability of the company would discharge the agent ; but this, I think to be a mistake. Perhaps, in this case, the plaintiff might have proceeded against the company, and by proving that the contract was made for their benefit, might have *recovered* ; and especially, with the farther proof, which was adduced in this case, that they had usually paid notes drawn and signed in this way. But will it be said, that this is any reason why the agent should not also be liable, provided there is a direct personal obligation to pay ; and that there is such obligation in this writing, I have already shewn.

HOSMER, J. was of the same opinion.

GOULD, J. My opinion is, that the note in question binds the defendant, personally. The question is matter of mere legal construction, to be determined only from the face of the instrument. For, the authority of the defendant to bind the company not being disputed ; there is no extrinsic fact, which can have any influence, in our determination. To show, that this remark is, in its strictest sense, applicable to the present case, it may be observed, that promissory notes, not negotiable, have, from time immemorial, been regarded, and treated, in our courts of justice, as specialties.

It is certain, that an agent *may* bind himself, personally, by a contract, made for the benefit of his principal. And the question, whether the one, or the other, is the party bound, may depend, either upon the form of the signature only, or upon the signature, taken in connexion with something, appearing in the body of the instrument. The note, now in question, is in this form : " *I* promise to pay, &c. for value received ;" and signed " *A. W. Magill*, agent for the *Middletown Manufacturing Company*." Now, the only question is, whose contract is this ? In other words, whose language is it ? If the principal, claimed to be bound by it, were a natural person ; the *body* of the instrument would afford no ground of inference, either way. For the pronoun, " I," might denote either the principal, or the agent. But in this case,

the words of the note are, in my judgment, very material. For though it is true, in legal theory, that a corporation aggregate is an artificial, or civil person ; yet, the words "*I* promise," as referred to such a corporation, are extremely unappropriate, and in the common use of language, and the common forms of written instruments, entirely unknown. Indeed, the pronoun, *he*, or *she*, would be quite as likely to be employed, with reference to such a corporation, where the language of a contract is in the third person, as the pronoun, *I*, would have been, to designate the manufacturing company, in the present case. It is true, that in *Rex* v. *Bigg*, 3 *P. Wms.* 422., a note drawn in this form, and signed " *Joshua Adams, on behalf of the Bank of England,*" was, by a divided opinion, holden to be a bank-note. But this determination was founded upon the long and notorious *usage* of the bank, by which such notes had been recognized and adopted, by that corporation, as their own ; and in consequence of which a universal credit had been given them, as such, by the public. And upon the same principle, the same determination would have been had, I trust, *whatever* might have been the form of the instrument, or of the signature, thus adopted and sanctioned. Such also was the principle, which governed the case of *Witte* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 260. Judging only from the body of the note, therefore, I should certainly conclude, that it was the contract of *the individual* signing it.

But the form of the signature, it is said, establishes a different conclusion. If there were any *inconsistency* between the terms of the instrument, and the mode of signature ; that circumstance might present a distinct question from the one before us. But there is none. The signature of the defendant does not purport to have been made *in behalf* of a principal. In the form, " *A. W. Magill*, agent for the *Middletown Manufacturing Company*," the words, " agent *for* " the company, are equivalent, only, to the words, " *agent of*, or *to*, the company." They do not, therefore, express an *act of agency*, as the words " *A. B. for C. D.*" would do. They are mere *description*. I agree, that no precise form of words is indispensable to the execution of an instrument, by an agent, for a principal. But it must appear, in some way, that the instrument is executed in *behalf* of the principal ; or it cannot be his act. Here, it does not so appear.

*New-Haven,*
November,
1818.

Hovey
*v.*
Magill.

But why, it is asked, is the word, " agent," used in the signature, if it was not intended to bind the company? It might, perhaps, as well be asked, why the pronoun, " I," is used, in the body of the note, if the person signing was not intended to be personally bound? But the more proper answer is, that such additions are often made, by way of *description,* when they can have no legal effect. It is not unusual for one, who, as surety, executes a joint bond, with the principal debtor, to annex to his name, the character, in which he signs.   But there is no doubt, that he is liable to the creditor, as principal.   An executor, or administrator, who assumes a debt, due from the person, whom he represents, by giving his own note for it, frequently annexes to his name his representative character. But it is well settled, that the contract binds himself, personally, and not the assets in his hands. So also, in the present case, the defendant, probably, added the words " agent for the *Middletown Manufacturing Company,*" to shew, that he was to pay out of the company's funds, or that he was to charge the payment over to the company.   But whatever may have been actually his object, the addition can, in my judgment, have no effect, upon the *construction* of the instrument.

This view of the case appears to me to be the correct one, and is justified, I think, by the authorities introduced. These are very numerous; and I do not wish to enter into a minute examination of them.   Of those, however, which have been cited for the defendant, it is proper for me to take some notice.

The case of *Wilks* v. *Back,* 2 *East,* 142. affords no more support to the argument on one side, than on the other. Every circumstance in that case went to show, that the principal was bound.   He must have been *named* in the body of the bond of submission. The agent, being himself also a party, had signed and sealed, *for himself, separately;* and then signed, " *For J. B.—M. W. :*" a form, prescisely tantamount to, " *M. W.* in *behalf* of *J. B.*" The *intention* to bind the principal was the clearest imaginable: the only question was as to the *form* of signature, (which was, undoubtedly, a proper one for binding the principal): whereas, in the present case, the *intention* is the main point in question.

In *Gilman* v. *Pope,* 5 *Mass. Rep.* 492. the action was brought *by* an agent of a corporation, as upon a promise

made *to* himself. The contract did not even describe him, as agent ; but the court held, that he could not maintain the action : since the promise, if made to him, in his private capacity, would be void, as being without consideration. There was no question, and could be none, as to the proper mode of *signing,* by an agent, to bind his principal : but as it appeared from the written agreement, exhibited in proof, of the promise, that the assessment, for which the action was brought, was to be paid, for the benefit of the corporation, which was actually the party in interest ; the chief justice held, that the corporation might maintain the action. This case, then, has clearly, nothing in common with the present. *Odiorne* v. *Maxcy*, 13 *Mass. Rep.* 178., though it resembles this case, in one respect, falls far short of the point, which it is incumbent on the defendant to establish. The action was against a cotton factory company, as indorsers of two promissory notes : the indorsment, by the company's agent, was in the same form, as that now before us : and the court held, that if the property, for which the note was given, was purchased for the company, they would be liable. It is true, then, that, so far as regarded the *form of signature,* the court was of opinion, that one exactly like the present, might bind the principal ; and it may be admitted, consistently with my own views, that under the circumstances of that case, such might be its effect. For there, as the note was made payable *to the company* ; as, before indorsement, it was the company's property ; and, as no individual, in his private capacity, *could* indorse it, so as to pass the interest ; it might fairly be presumed, that the indorsement, containing the addition of " *agent*" for the company, was *intended* to be the company's act. And if so, it might, by a very liberal application of original rules, (but certainly not otherwise), be considered as their act, in law. Here, however, no such grounds of presumption exist.

The same explanation is applicable to the case of *Shelton* v. *Darling*, 2 *Conn. Rep.* 435., where the indorsement was in the same form. There, the bill of exchange was addressed to *Darling, as agent* for the commission company ; and having been so addressed, by *third* persons, was regarded as a bill, drawn *upon* the company. That case, therefore, comes directly within the principle of the former one. It may be added, that in *Shelton* v. *Darling*, the liability of the

company was, in this court, *assumed,* on both sides.   That point, therefore, though involved in the determination, was not discussed, nor made.

*New-Haven,*
November,
1818.

Hovey
*v.*
Mag'ill.

In *Hodgson* v. *Dexter,* 1 *Cranch,* 345., it appeared from the whole frame and structure of the body of the deed, that the lease was virtually made *to the government ;* and that, so clearly, that the form of the signature was entirely disregarded by the court.   It was a deed *inter partes,* between *Hodgson,* of the one part, and *Samuel Dexter,* the defendant, " Secretary at War," of the other.   The demise was to " *Samuel Dexter* and his successors"—containing covenants by the lessor, with " *Samuel Dexter* and his successors"— and covenants by the defendant, " for himself, and his successors."   It was apparent, upon the face of the deed, that the lease was for the use of government ; and the determination was grounded, solely, upon the *body* of the instrument.   No comment can be necessary to show, that that case is inapplicable to the present question.

The case of *Frost* v. *Wood,* 2 *Conn. Rep.* 23., is equally irrelevant.   Indeed, that is one of the clearest cases supposable, of an act by agency, binding upon the principal.— The defendant was not, as in this case, a corporation aggregate ; but a natural person : the language of the note was " *I* promise to pay"—signed, " *For B. Wood, A. W. Warriner :*" a form of signature, confessedly tantamount to " *A. B. by C. D.*"   The pronoun " I," was, therefore, very properly construed, as referring to the principal.   It seems extraordinary, indeed, that the obligation, created on the part of the principal, by such a mode of signing, where the agent had competent authority, should ever have been doubted.

These, I believe, are all the authorities, relied upon, for the defendant ; and none of them, as I view the subject, support his defence.

I shall not occupy time, for the purpose of explaining the authorities cited for the plaintiff ; but barely remark, that they appear to me decisive in his favour.   I am, therefore, of opinion, that there ought to be a new trial.

CHAPMAN, J.   It is admitted, in this case, that the defendant had authority to bind the company, whose agent he claimed to be, and that he borrowed the money, and gave the

*New-Haven,*
November,
1818.

Hovey
*v.*
Magill.

note in question, for the benefit of the company. The only question, then, presented by the motion, is, whether he executed the note in such *form* as to bind the company ; for if he did not, he must undoubtedly be bound himself.

The authorities cited by the plaintiff abundantly prove this position ; that the addition of " treasurer of the jocky club"(*a*)—" guardian"(*b*)—" executor," &c. produce no effect upon the obligation entered into, for this plain reason, that persons acting in those capacities, can bind only themselves. The addition of titles, whether civil or military, importing no power to bind others, may well be rejected as surplusage. But where one acts as the agent of another, with full power so to act, and for the sole benefit of his principal, the *form* of his signature would seem to be of little importance, provided the character in which he acted, was apparent on the face of the obligation.

Was it not so here ? Why did the defendant add to his name, " Agent for the *Middletown Manufacturing Company* ?" To bind himself in his *personal capacity* ? Or *to bind those for whom he acted* ?

It is said, indeed, that the name of the company ought to have been signed ; but will it be pretended, that this is indispensable ? Do the authorities support such a rule ? The case of *Thomas* v. *Bishop,* 2 *Stra.* 955. so much relied on by the plaintiff, and perhaps one which goes further in his support, than any other, does not warrant the position.

In that case, the bill was drawn on the defendant as " *cashier,*" but not *accepted* by him as such. He did not add to his name *cashier.* Had he done so, having authority to bind the " *York Buildings Company,*" there can be little doubt but that there would have been a different determination.

The numerous cases against public agents, found in the books, sufficiently evince, that it is enough, that the *agency* appears on the face of the contract, whatever may be the *form* of the signature.(*c*)

The case of *Wilks & al.* v. *Back,* 2 *East,* 142. seems to me decisive of this case. In that case, the Judges severally say, that it is immaterial whether the attorney put his name first, or last.

(*a*) 1 *Wash. Rep.* 199.                    (*b*) 5 *Mass. Rep.* 299.
(*c*) See *Hodgson* v. *Dexter,* 1 *Cranch* 345.

But the case, on which I more especially rely, is that of *Shelton & al.* v. *Darling,* 2 *Conn. Rep.* 435. I am unable to distinguish that from the case under consideration. A bill was drawn on the defendant as " agent of the Commission Company," and accepted by him thus—" *Noyes Darling,* agent C. C." The Court held, that he was not holden, but that he bound the company. After this decision, there seems scarcely room to doubt, that the defendant in this case is not holden.

New trial not to be granted.