Neill v. Spencer.

---

JAMES L. NEILL ET AL.

V.

JULIUS SPENCER.

1. CONTRACT—SERVICES AS PASTOR.—Where a person who has performed services for a religious society claims remuneration therefor for salary as pastor, and there is no proof that he ever became pastor of such church, he cannot recover even upon a *quantum meruit*.

Neill v. Spencer.

2. ECCLESIASTICAL LAW—CALL TO PASTORAL LABOR—INDIVIDUAL LIABILITY OF PERSONS SIGNING CALL.—Appellee received a call to become the pastor of the church at A, which call was signed by appellants in pursuance of a vote of the church. He never accepted the call, or became installed as pastor according to the rules of the church, but acted as pastor for a year. In an action against appellants for salary, *held*, that appellants were merely acting for the congregation in obedience to a vote, and were not personally liable for the salary voted. *Held*, further, that appellee, having refused the call, and thereby failed to consummate the contract, and become pastor of the church, he is not entitled to the emoluments of that office.

APPEAL from the Circuit Court of Shelby county; the Hon. W. H. HESS, Judge, presiding. Opinion filed, November 19, 1879.

Messrs. MOULTEN, CHAFFEE & HEADEN, for appellants; that a mere offer without acceptance does not constitute a contract, cited Bishop on Contracts, § 174; McKinley v. Watkins, 13 Ill. 140; Esmay v. Garton, 18 Ill. 483; Storey on Contracts, § 377; Rommel v. Wingate, 103 Mass. 327; Fox v. Turner, 1 Bradwell 153.

The acts of appellee show that he regarded his contract as made with the whole church: St. Patrick's Church v. Gavalon, 82 Ill. 170.

Appellants are not liable personally: Doyle v. Teas, 4 Scam. 202; Hovey v. Magill, 2 Conn. 680; Means v. Swormstedt, 32 Ind. 88; Baldwin v. Bank, 1 Wall. 234; Bank v. French, 21 Pick. 486; Doane v. Dunham, 79 Ill. 131; U. S. L. I. Co. v. Advance Co., 80 Ill. 549; Munn v. Birch, 25 Ill. 35; Barker v. Garvey, 83 Ill. 184.

Parol evidence is admissible to show that the act was an official one: Mann v. Richardson, 66 Ill. 481; Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326.

The contract must be construed by reference to the canons of the church, which form a part of it: Cheeney v. Chase, 58 Ill. 509.

The undertaking, if any, was that of the church, and appellants signed merely as agents: Barlow v. Cong. Soc., 8 Allen, 464; Powers v. Briggs, 79 Ill. 493; Bradley v. Boston Glass Co., 16 Pick. 350; Ballou v. Tolbert, 16 Mass. 460;

Walker v. Wait, 50 Vt. 668; N. E. M. I Co. v. De Wolf, 8 Rich. 56 ; Mann v. Chawber, 9 Mass. 335 ; Shoe and Leather N. B. v. Dix, 123 Mass. 148 ; Hancock v. Yunker, 83 Ill. 208 ; H. R. & E. R. R. Co. v. Walsh, 85 Ill. 58 ; N. W. Distilling Co. v. Brant, 69 Ill. 658; Means v. Swormstedt, 32 Ind. 87 ; Vater v. Lewis, 36 Ind. 288 ; Duncan v. Niles, 32 Ill. 532.

Messrs. Thornton & Hamilton and Mr. William Chew, for . appellee; as to the right of a minister to recover compensation for his services, cited *ex parte*, Cumming, 4 Wall. 277; Dutch Church of Albany v. Bradford, 8 Cow. 457; First Religious Soc. v. Stone, 7 Johns, 113; Duffendorf v. Trustees, 20 Johns, 12; Chase v. Cheeney, 58 Ill. 509.

Appellants cannot deny the execution of the paper signed by them, where they have performed acts under it, recognizing its validity: Boggs v. Olcott, 40 Ill. 303; Hefner v. Dawson, 63 Ill. 403; Smith v. Newton, 38 Ill. 230.

To avoid personal liability the contract must show it was signed in a representative capacity: DeWitt v. Welton, 5 Seld. 571; Storey on Agency, § 278.

There is nothing to show that the society had a legal organization: Ada St. Church v. Garnsey, 66 Ill. 132; Rev. Stat. 1874, 292.

Not having a legal existence, appellants are personally liable: Ada St. Church v. Garnsey, 66 Ill. 132; Little v. Bailey, 87 Ill. 239; Burlingame v. Brewster, 79 Ill. 515; Powers v. Briggs, 79 Ill. 493; Taft v. Brewster, 9 Johns., 333; Sturdivant v. Hull, 59 Me. 172; Fiske v. Eldridge, 12 Gray, 474; Hills v. Bannister, 8 Cow. 32; Bradley v. Boston Glass Co., 16 Pick., 350.

McCulloch, J. This was a suit in assumpsit brought by appellee, who is a minister of the gospel in the Presbyterian Church, to recover of appellants his salary as pastor of the church at West Okaw. The declaration contains one special count upon the instrument hereinafter set out, and a common count for services rendered by appellee for appellants at their request, for services rendered by appellee as regular pastor of West Okaw congregation at request of appellants; for servi-

ces rendered by appellee as regular pastor of appellants at their request; also for money had and received by appellants for the use of appellee, and for money due him on an account stated. Appellants pleaded the general issue, payment, and want of consideration for the promises.

A trial was had before the court without a jury, and a judgment was rendered against appellants for the sum of three hundred dollars. From this judgment they appeal to this court. On the trial in the court below, appellee introduced as the foundation of his claim an instrument in writing, in the following words :

"The congregation of West Okaw, being on sufficient grounds well satisfied of the ministerial qualifications of you, Julius Spencer, and having good hopes of our past experience of your labor, that your ministrations in the gospel will be profitable to our spiritual interests, do earnestly call and desire you to undertake the pastoral office in said congregation; promising you in the discharge of your duty all proper support, encouragement and obedience in the Lord.

"And that you may be free from worldly cares and avocations, we hereby promise and oblige ourselves to pay to you the sum of eight hundred dollars for the first year, and one thousand dollars yearly thereafter, in regular quarterly payments, during the time of your being and continuing the regular pastor of this church.

"In testimony whereof, we have respectfully subscribed our names this 23d day of February, A. D. 1875.

"James L. Neill, G. M. Thompson, William McBurney, Fred. Orris, U. V. Stine—Elders.

"C. K. Roe, Jas. Koch, John Foster, Samuel Stewart—Deacons.

"I hereby certify that the persons whose names are subscribed to the foregoing call, were duly authorized to do so by a public vote of the congregation, and that the call has been in all respects prepared as directed in chapter 15 of our form of government.

           "A. B. Frazier, Moderator."

Appellee then proved, by his own testimony, as well as that

of others, that he preached for the West Okaw Presbyterian church for over two years, worked in the Sunday-school, attended prayer meetings and visited them. He further testified that Thompson, one of the appellants, acknowledged the indebtedness and paid him his share, or one-ninth of the amount then due, and that Mr. Foster, who was then treasurer, accepted his statement of the amount due him. He also exhibited an account kept by him of receipts from the West Okaw church, wherein he gives credit for various sums of money collected from divers other members of the congregation, as well as from appellant. Foster, Larrimore and Showers were the trustees of the church.

On cross-examination, appellee admitted that he was never installed pastor of the West Okaw church; that the call offered in evidence was made out in accordance with the rules prescribed in the book containing the form of government of the presbyterian church; that he was present at the meetings of the presbytery at Taylorville, at Vandalia, and at Pana, while he preached at West Okaw, and knew of the action of the Presbytery on the matter of said call. He further testified that he never accepted the call, as that would have made it necessary for him to be installed; that he did not wish to be installed, because they did not pay promptly, as they had promised, and that finally he declined the call altogether. From May, 1877, until November of the same year, he preached for the same church, as stated supply, on another agreement, and received his pay for it. He said, also, that although he was not installed, he was pastor-elect of the church, and accepted as such by the church and the presbytery; that ministers, after their ordination, and before installation, act and officiate as pastor-elect.

B. Mills testified that he was a Presbyterian minister; that he knew appellee to be a faithful minister; that he had visited the congregation and found them satisfied with appellee, but found some dissension in the congregation, on account of which his salary could not be collected. He also testified that the confession of faith, including the constitution of the Presbyterian church in the United States, embodies the rules of gov-

ernment and discipline and usage of the church, by which it has been governed for two hundred years, and that it is the custom of the church to look for payment to the persons who sign the call.

On the part of appellants it is claimed that they signed the call as agents and officers of the West Okaw Presbyterian church, by the direction of the church, and for and on behalf of the church, in accordance with the usage, custom, rules and government of the church, and in a ministerial capacity only; that they simply "applied the executive hand as the instrument of another," not intending, or being understood by any one, to personally bind themselves for the salary mentioned in the call. They further contend that, even if the call had been accepted by appellee, and if by reason thereof they would have become personally bound for his salary, yet, because the call was not accepted, and in consequence thereof appellee never became pastor of the church, the alleged contract lacked the element of mutuality, and they never became bound thereby. In support of these two propositions, appellants introduced in evidence so much of the constitution of the presbyterian church as was deemed necessary to show the nature of the church government, the relationship of the pastor to the church, and the orderly method of instituting the same. From this evidence it appears that "the church session consists of the pastor and ruling elders of a congregation;" that the pastor is the moderator of the session, except when for prudential reasons some other minister may be invited to preside; that "a presbytery consists of all the ministers, in number not less than five, and one ruling elder from each congregation within a certain district;" that the presbytery has power to install, remove and judge ministers; to examine, approve or censure the records of church sessions; and it is its duty to keep a fair record of its proceedings.

When the people of any congregation are prepared to elect a pastor, it is made the duty of the session to take measures to convene them for that purpose, and to that end to solicit the presence and counsel of some neighboring minister to assist them at the contemplated election. On the day appointed it is

made the duty of the minister so invited to preside, and having first ascertained by a majority vote that it is the desire of the congregation to proceed to the election of a pastor, he is to take their votes, and if the people be nearly or entirely unanimous, or if the majority shall insist on their right to call a pastor, the presiding minister, after using his utmost to pursuade the congregation to unanimity, is to proceed to draw a call in due form and to have it subscribed by the electors; certifying at the same time, in writing, the number and circumstances of those who do not concur in the call, all of which shall be laid before the presbytery with the call.   A form for the call is then given substantially the same as that sued on in this case. It is then provided that if any congregation shall choose to subscribe their call by their elders and deacons or by their trustees, or by a select committee, they shall be at liberty to do so.   But it shall in such case be fully certified to the presbytery by the minister or other person who presided, that the persons signing have been appointed for this purpose by a public vote of the congregation, and that the call has been in all other respects prepared as before directed.   It is then provided that " When a call shall be presented to any minister or candidate, it shall always be viewed as a sufficient petition from the people for his installment.   The acceptance of a call by a minister or candidate shall always be considered as a request on his part to be installed at the same time; and when a candidate shall be ordained in consequence of a call from any congregation, the presbytery shall, at the same time, if practicable, install him pastor of that congregation."   And further, that " The call thus prepared shall be presented to the presbytery under whose care the person shall be, that if the presbytery think it expedient to present the call to him, it may be accordingly presented; and no minister or candidate shall receive a call but through the hands of the presbytery."

If the call is addressed to a probationer, that is, a candidate for the ministry who has not as yet been ordained, provision is made that ordination and installation shall take place at the same time, in the presence of the presbytery; but if it is addressed to one already ordained, as was the case in this instance,

installation may be performed by a committee appointed by the presbytery for that purpose. One of the trials for ordination, all which appellee must be presumed to have duly passed at some former period, consists of a careful examination as to his knowledge of the constitution and principles of government, and discipline of the church; and one of the obligations he enters into, both at the time of ordination and of installation, is that he approves of the government and discipline of the Presbyterian Church of the United States.

The book further provides that "When any minister is to be settled in a congregation, the installment, which consists in constituting a pastoral relation between him and the people of that particular church, may be performed either by the presbytery or by a committee appointed for that purpose, as may appear most expedient, and the following order shall be observed therein:

" A day shall be appointed for the installment at such time as appears most convenient, and due notice thereof given to the congregation.

" When the presbytery or committee shall be convened and constituted on the day appointed, * * * the officer presiding shall state the design of the meeting, and briefly recite the proceedings of the presbytery thereto and addressing himself to the minister to be installed, shall ask him certain questions, one of which is as follows:

" Are you willing to take charge of this congregation as their pastor, agreeably to your declarations at accepting the call ? * * * To all these having received satisfactory answers, he shall propose to the people the same or like questions as those directed under the head of ' Ordination.'

" One of the questions to be propounded to the people, and the only one material to this case, is as follows:

" And do you engage to continue to him, while he is your pastor, that competent worldly maintenance which you have promised, and whatever else you may see needful for the honor of religion, and his comfort among you ? "

The questions being answered in the affirmative, the pastoral relation is constituted by appropriate ceremonies.

The proof shows that a meeting of the congregation of West Okaw, for the election of a pastor, was held at the time indicated in the call, at which meeting Rev. A. B. Frasier presided as moderator; that appellee was duly elected, and that the elders and deacons were instructed to sign the call; that they did so, and the same was certified by the moderator, and by him properly returned to the presbytery. At the meeting of the presbytery, held at Taylorville, Oct. 21, 1875, as appears from the minutes of that body, which are in evidence, the call was received and sustained as regular, and the same was placed in appellee's hands. Appellee signified his willingness to accept the call, but requested that installation be deferred until after the next meeting of the presbytery, which request was granted. No further action was taken by the presbytery until April 11, 1877, when, at a meeting held at Pana, it appears that appellee " declined the call from West Okaw church." It also appears from the evidence that it is usual in such cases to return the call to the church from which it emanates, but this action seems to have been omitted on this occasion.

Some difficulty having arisen between appellee and the congregation respecting his claim for salary during the time he held the call under consideration, he complained to the presbytery, whereupon that body, at its meeting at Shelbyville, April 12, 1878, passed a resolution reciting that, whereas, the West Okaw church is largely behind in the payment of pastor's salary, such church is urged to make payment as soon as possible. This suit is brought by appellee against the elders and deacons individually, to recover a balance of salary claimed to be due him up to the time he returned the call to the presbytery. It is apparent from this whole record that the instrument sued on, by virtue of which it is claimed the defendants have made themselves liable, is but one of the preliminary steps, rendered necessary by the laws of the church, to be taken in any attempt to establish the relationship of pastor and people according to the principles and usages of the Presbyterian church.

The record in this case possibly does not disclose to us fully the functions of the pastoral office, nor the duties towards the pastor devolving upon his congregation. Enough, however,

does appear to show that the pastor occupies an official relation to the church, and not that of a mere hireling. That relationship is constituted by the action of the presbytery in the ceremony of installation, in which action all previous steps taken as well by the candidate as by the presbytery and the congregation, find their consummation. After installation neither the pastor nor the congregation can dissolve the pastoral relation without the consent of the presbytery. The pastor is then a salaried officer of the church—the presiding officer in the college of elders. It is claimed, however, that it is customary for a pastor-elect to officiate before installation, and from this fact we are asked to infer that during such time he is entitled to his salary. But the question at once arises, who is to be regarded as a pastor-elect? Is it one who having received a call intimates a willingness to accept the same, but asks that his installation be deferred until he has tested the promptness of the congregation to pay his salary? or is it one who makes an unqualified acceptance of the call, enters upon his pastoral duties and only awaits the pleasure of the presbytery to fully invest him with the title and emoluments of his office? From all the lights we have before us we cannot find the status of the pastor-elect defined in the constitution of the church, and from the evidence we are unable to say that appellee fills the requirements of such a position if any such is recognized in the polity of the church. The claim of appellee appears to us to be an anomalous one. A provision of one of the rules already quoted is that the acceptance of the call by the candidate shall always be considered a request to be installed. The minutes of the presbytery show that he did not accept, but signified a willingness to accept, accompanied with a request that installation might be deferred until a future period.

After due consideration of the matter for a year and a half, he deliberately declined the call, and refused to become the pastor of the church that had called him. He now claims the emoluments of the office of which he declined to assume the burdens and responsibilities.

If we probe this claim of title to salary a little further, we will find appellee occupying the pulpit of the West Okaw

church under three different conditions.  From May, 1875, until October of the same year he was in one sense pastor elect, but had never received his call; and it was not certain that he ever would, for that matter rested wholly with the presbytery of which he was a member.  From October, 1875, until April, 1877, he was still, in another sense, pastor elect, having received his call, but holding its acceptance under advisement.  From April, 1877, until October of the same year he was merely a stated supply, having declined the call to the pastorate.  His right to salary certainly could not accrue under the call, until the presbytery had permitted him to entertain it by placing it in his hands.  Had he been installed we do not say that under some circumstances his right to salary might not have related back to the time of his assuming the duties of his office, if he had done so prior to his installation.  But we are unable to see how, under any circumstances, he could claim salary for any portion of time prior to the receipt of the call by him, unless some other foundation be shown than the call itself.

Various difficulties have been suggested on one side, and admitted by counsel on the other, as to the proper remedy for the recovery of compensation for services rendered by a minister of the gospel, where no special contract exists.  We do not feel called upon to solve any such difficulties, if any there are, but we are not to hold appellants liable in this action for the simple reason that if we fail to do so, it may be difficult for appellee to find a remedy.  It is a credit to the Christian church, to pastors as well as people, that few cases of this character find their way into the secular courts, but when the government of the church is unable to furnish the proper remedy, and resort must be had to the civil tribunals, the rules of law must be applied to the disputants in like manner as to all other litigants.  It is in evidence that it is customary for a pastor to look to those who sign the call, and appellee evidently had that idea when he publicly declared that the signers of his call were good enough security for his salary.  It possibly did not occur to him that the salary promised in the call was to be paid only during the time of his being and continuing the regular pastor of the church, and that he had not yet assumed the office.  He

now finds it necessary to fall back upon a supposed custom of the church which sanctions the practice of a pastor elect, officiating as pastor before installation. This claim, as before said, we do not find supported by the evidence. The call is an invitation, emanating from the congregation as an aggregate body, addressed through the presbytery to the candidate to become their pastor, and promising him, in case he does so, a certain salary for the time of his being and continuing pastor of the church. It is necessarily subject to all the conditions precedent which, according to the constitution of the church, are necessary to be observed in instituting the pastoral relation, and without which the person called, has no right to assume the functions of this important office. Having failed, by his own refusal of the call, to consummate his title to the office, he cannot now claim its emoluments.

It does not appear from the evidence that this congregation is an incorporated society, although there is some evidence of its having a board of trustees. Whether or not appellee might have a remedy against the corporation, if such it is, or against the individual members thereof, we do not now pretend to say, but it is very evident that inasmuch as appellee has rested his entire claim in this case upon the supposed individual undertaking of these appellants, as set out in the call, we must find he has failed to establish his right of action. He says of himself that he never accepted the call, as that would have made it necessary for him to be installed; that he did not wish to be installed, because they did not pay him promptly, and that he finally declined the call altogether. Having of his own motion refused to consummate the contract proposed to him, he cannot now claim the benefit of it. In this respect there is a total lack of mutuality, and the promise contained in the call never became obligatory. Appellee must seek some other remedy for the value of his services rendered. We also fail to see how these appellants could be held personally liable upon the instrument sued upon to any greater extent than other members of the congregation, even if the pastoral relation had been fully established. The paper must be interpreted in the light of the rules and regulations of the church in conformity with which

Neill v. Spencer.

the parties were endeavoring to shape their action, and to which they were all subject. Viewed in this light, we discover that appellants could not of their own motion elect or call a minister to the pastorate of their church. That must be done by the majority of the members of the church entitled to vote. The call is of no force or validity whatever until properly certified by the moderator of the meeting at which the election takes place, and when so certified it must appear that the officers signing it were authorized to do so by a public vote of the congregation. Nor has the candidate a right to accept the call until it is placed in his hands by the presbytery of which he is a member. Even then it is of no binding force until installation has taken place. At the time of installation a promise is exacted from the congregation that they will do as they have promised in the call. In every step of the transaction it is the congregation, as an aggregate body of individuals, that speaks. The elders and deacons are but the mouth-piece through which the congregation make their wishes known. It is certified by the moderator to be the act of the congregation, and unless so certified it would not be accepted by the presbytery, nor would the candidate have a right to act upon it. In the light of the rules of the church, there can be no mistaking the intent of the parties. The congregation was seeking a pastor and appellee was a candidate for the office. The congregation took the usual and necessary steps to make known to him their wishes, promising him a certain salary during the time of his being and continuing the regular pastor of the church. There is not a feature about the case tending to show that the elders and deacons ever intended to assume the whole burden of the salary. Their whole action was for and on behalf of the congregation of which they were the officers and not for or on their own behalf alone. The intent of the parties being clear, and the alleged contract being consistent with that intent, the law will give it effect as the parties understood it. Mechanics' Bank v. Bank of Columbia, 5 Wheat. 326; Means v. Swormstedt, 32 Ind. 88; Hovey v. Magill, 2 Conn. 680; Baldwin v. Bank, 1 Wall. 234; Bank v. French, 21 Pick. 486; Powers v. Briggs, 79 Ill. 493; Burlingame v. Brewster, Id. 575.

There is nothing in the case upon which to base a claim upon the *quantum meruit* for services rendered. The whole claim is for salary as pastor, and there being no proof that appellee ever became pastor, his cause of action wholly fails.

Reversed and remanded.