## J. and D. Hinsdale *against* Eells.

In an action of *indebitatus assumpsit*, containing three counts, for three distinct sums of money, received by the defendant of the plaintiffs, at different times, the plaintiffs offered in evidence, the following writing, signed by the defendant : " Cash received of *J. & D. H.* at various times, and which I am to pay them on request ; *May* 4th, $250—*June* 10th, $300—*June* 22d, $101—six hundred and fifty-one dollars. *July* 20th, 1819." Held, that the taking of such writing, did not extinguish the original causes of action, and that it was, therefore, admissible, to support the promises laid in the several counts.

In an action for money, loaned by the plaintiffs to the defendant, to be repaid on request, evidence that the defendant had lent the plaintiffs his notes, to enable them to raise money at a bank, which had been discounted for the plaintiffs' accommodation, and were not due at the commencement of the action, was held to be inadmissible, to defeat the plaintiffs' right of recovery.

THIS was an action of *indebitatus assumpsit*, for money had and received, commenced *July* 20th, 1819. The declaration was as follows : " That at the city of *Middletown*, on the 4th day of *May*, 1819, the defendant became justly indebted to the plaintiffs, in the sum of 250 dollars, before that time had and received, by the defendant, to the plaintiffs' use ; and being so indebted, in consideration thereof, afterwards, to wit, on the 20th day of *July*, 1819, at said city, promised the plaintiffs to pay them, on request, the aforesaid sum of 250 dollars : That the defendant, at said city, on the 10th day of *June*, 1819, became justly indebted to the plaintiffs, in another and further sum of 300 dollars, for so much money before that time had and received, by the defendant, to the use of the plaintiffs ; and being so indebted, afterwards, to wit, on the 20th day of *July*, 1819, at said city, in consideration thereof, promised the plaintiffs to pay them, on request, the aforesaid sum of 300 dollars : That the defendant, at said city, on the 22nd day of *June*, 1819, became justly indebted to the plaintiffs, in another and further sum of 101 dollars, and 68 cents, for so much money before that time had and received, by the defendant, to the use of the plaintiffs ; and being so indebted, afterwards, to wit, on the 20th day of *July*, 1819, at said city, in consideration thereof, promised the plaintiffs to pay them,

*Middlesex,*
*October,*
*1820.*

Hinsdale
*v.*
Eells.

on request, the aforesaid sum of 101 dollars, and 68 cents : Yet the defendant, his several promises aforesaid not regarding, hath never performed the same, nor paid to the plaintiffs, nor to either of them, said several sums of money, nor any part thereof, though he hath been, by the plaintiffs, thereto often requested."

The cause was tried in *Middlesex* county, *July* term, 1820, before *Bristol*, J.

To support the promises laid in the declaration, the plaintiffs offered in evidence, the following writing, which was admitted to be duly signed by the defendant : " Cash received of *J.* and *D. Hinsdale*, at various times, and which I am to pay them on request;

| | |
|---|---|
| *May* 4th, | $250 |
| *June* 10th, | 150 |
| "     " | 150 |
| *June* 22nd, | 101.68 |
| | 651.68 |

Six hundred and fifty-one 58-100 dollars. *July* 20, 1820.

*Samuel Eells*, 2nd."

To the admission of this evidence, the defendant objected ; but the judge admitted it.

To shew that the plaintiffs were not entitled to recover, the defendant offered to read in evidence, the following writing, which was admitted to be duly signed by the plaintiffs : " In a statement of business of *S. Eells*, 2d, and *J.* and *D. Hinsdale*, it appears, that on a note of 754 34-100 dollars, 4th of *May*, 90 days, there is due to us only

| | |
|---|---|
| $250, | 250 |
| 525, *June* 10,—due | 150 |
| 625, "     "     " | 150 |
| 353.20 *June* 22, | 101.68 |
| | 651.68 |

The same is all due, and now payable to us, on account of advances as above.

*J. & D. Hinsdale*."

In connexion with this writing, the defendant also offered the deposition of *George Hoadly*, Esq., president of the *Eagle* bank, which was as follows : " On the 20th of *July*, 1819, the

*Eagle* bank was the owner of four notes, signed by *Samuel Eells* 2nd, and indorsed by *J.* and *D. Hinsdale*, viz.

one note for $754.34, *May* 4th, 1819, at 90 days.

        625.00, *June* 10th, " at 90 days.

        525.00, " " " at 4 months.

        353.20, payable *June* 24th.

I find, that the last-mentioned note, was returned to Messrs. *Hinsdales*, some days before it was due, and I cannot find, that after that time, any note against Mr. *Eells* was ever sent to us, either as renewal of this, or for any other purpose. These four notes had been all sent to the bank, with the indorsement of Messrs. *Hinsdales*, as security for money. The three first were on hand *July* 20th, 1819. The Messrs. *Hinsdales*, having had some accommodations at the bank, had agreed to keep with us a certain sum, in good negotiable paper, beyond the amount of money advanced, which was not to be withdrawn, without our consent. At the time referred to, say the 20th of *July*, 1819, and throughout the summer of that year, we had about 3000 dollars beyond the stipulated sum ; and they could, therefore, withdraw that amount." The plaintiffs objected to the admission of the writing, and the deposition ; and the judge rejected them.

The plaintiffs having obtained a verdict, the defendant moved for a new trial, on the ground that the decisions of the judge, above stated, were erroneous ; and the motion was reserved.

*Staples* and *Hotchkiss*, in support of the motion, contended, 1. That the writing offered by the plaintiffs, ought to have been rejected. The declaration consists of three distinct counts, for three several sums of money, advanced at different times ; and a promise is alleged to have been made on the 20th of *July*, 1819, to pay the sum named in each count, on request. It is not a declaration for one cause of action, but for three causes of action.

From the face of the declaration, the contract appears to be an *express* contract. It is admitted, that an express contract, either written or verbal, may be given in evidence to support each count ; or facts may be proved, which will raise an implied contract, like that set forth in each count ; but one or the other must be proved.

*Middlesex.*
October,
1820.

*Hinsdale*
*v.*
Eells.

The writing offered by the plaintiffs, supports neither count in this declaration. It is a written *express* contract, in which the defendant acknowledges having received different sums of money, at different times, amounting to 651 dollars, 68 cents ; which amount he agrees, on the 20th of *July*, to pay, on request. This *express* contract excludes every *implied* contract. By this agreement, the several sums named are brought into one ; and there is an express undertaking to pay the amount. Every previous implied contract is *merged* in this new contract. The writing shews a contract to pay 651 dollars, 68 cents, the amount of sundry sums received ; but the writing does not contain three separate agreements to pay three several sums, amounting to that sum.

Does this writing contain three contracts ? If so, three separate actions might have been brought on it, at the same time ; for different counts on different causes of action, are the same as different actions.

The declaration ought to have been founded on this agreement, stating, that at different times, the plaintiffs had advanced to the defendant different sums, to the amount of 651 dollars, 68 cents ; then alleging the liability of the defendant to pay ; and then raising the promise. This they might have done, by reciting the writing, or by declaring upon it summarily. But the pleader could not split up this simple cause of action into three, and declare for it in three different counts. If he could do so, he could, upon the same principles, have brought three separate actions.

The consideration of every agreement, as well as the agreement itself, must be truly and correctly stated. 1 *Chitt. Plead.* 295 to 305. *Barker* v. *Smith*, 3 *Day* 312.

2. That after the writing offered by the plaintiffs had gone to the jury, the evidence offered by the defendant ought to have been admitted.

First, the writing signed by the plaintiffs, and offered by the defendant, ought to have been admitted as a part of the same transaction, covered by the writing offered by the plaintiffs, and admitted. The writing itself shews, that it is a part of the same contract.

Secondly, the writing offered by the defendant, shews, that the several sums of money named in the writing offered by the plaintiffs, were advanced to the defendant, on his own

notes, given, at different times, to the plaintiffs, and then not due ; and then, if such writing offered by the plaintiffs is not an express contract given by the defendant, he is not liable to pay the sums advanced by the plaintiffs, until the notes are due.

Middlesex, October, 1820.

Hinsdale
v.
Eells.

Thirdly, the deposition of *Hoadly* ought to have been admitted ; for it shews, that the notes on which the money was advanced, were then the property of the *Eagle* bank ; and the defendant was liable on them, at the commencement of the plaintiffs' action.

Fourthly, the evidence offered by the defendant, and rejected by the judge, shews, that the plaintiffs' claim was not for a simple advance or loan of money, but was for money, advanced on, or as the avails of, several negotiable notes, given by the defendant, at different times, to the plaintiffs, and by them negotiated at the *Eagle* bank, which, at the commencement of the plaintiffs' action, were not due. This money the defendant was holden to pay, when the notes became due, and not before, unless by virtue of the writing introduced by the plaintiffs. If this writing subjects the defendant to pay to the plaintiffs the money received, without regard to the notes, surely it is *a special contract*, and will not support the counts in the plaintiffs' declaration, but ought to have been specially declared on.

*Sherman* and *Stanley*, contra, contended, 1. That this was an action of *indebitatus assumpsit* for money loaned ; that in every such action, the plaintiff must state, and the jury must find, an express promise ; that this express promise may be proved, either by direct evidence, or by proving the loan, which the law considers as equivalent to direct evidence of a promise ; that each separate loan, is evidence of a promise to pay the sum loaned, and will support a separate action for it; that if separate actions may be brought for several sums, loaned at different times, distinct counts on these causes of action, may be united in one declaration ; that the writing introduced by the plaintiffs, was evidence of the several causes of action, as stated in the several counts ; that it was a mere admission of the facts as they took place ; and that the giving of that writing had no other effect, than to furnish such evidence, and did not extinguish existing liabilities, by reducing them into a

new contract, nor did it, in any way, vary or affect the ground of action.

2. That the evidence offered by the defendant, was properly rejected, as irrelevant. The plaintiffs' right to reclaim the money loaned to the defendant, did not depend upon the notes being due, or the defendant's being indemnified. The evidence in question, did not go to establish any condition to the loan of the money, nor to vary the terms of that loan.

PETERS, J. This declaration contains three counts, for three distinct sums of money received, by the defendant, at three different times, for the use of the plaintiffs, and raises therefrom three separate promises, at the date of the writ. In support of this declaration, the plaintiffs were permitted to give in evidence, an instrument in writing, signed by the defendant, in these words : " Cash received of *J.* and *D. Hinsdale,* at various times, and which I am to pay them on request ;

| | |
|---|---|
| *May* 4th, | $250 |
| *June* 10th, | 150 |
| " " | 150 |
| *June* 22nd, | 101.68 |
| | 651.68 |

Six hundred and fifty-one 58-100 dollars. *July* 20, 1819.

> *Samuel Eells*, 2nd."

If admissible to prove *either* count, the decision below was correct. All actions of this sort are grounded on promises, express or implied. In one case, the promise must be proved as alleged ; in the other, the consideration only, and this proves the promise, if laid as the law raises it. When one man has the money of another, though received at different times ; was it ever known that the law raised several promises at once ? Is it not rather a promise to pay the whole debt ? Otherwise, a merchant, who sells various articles, at various times, and charges them on book, may maintain *assumpsit* for each article, and lay all the promises at any time subsequent to the delivery of the last article ; although the books have been footed, the balance struck and subscribed by the debtor, under an express promise to pay it. Such a practice would be *sport* for one class of citizens, but *death* to another !

But admitting that this writing furnishes evidence of an implied promise only ; it supports neither count in this declaration, but would be proper evidence on a count upon an *insimul computassent*. In *May* v. *King, Bul. N. P.* 129. upon *assumpsit* for work and labour, and money lent, it appeared, that there had been mutual dealings ; that the parties had come to an account ; that the defendant was found indebted, and promised to pay the balance. The plaintiff was nonsuited, because there was no count upon an *insimul computassent*. And in *Styart* v. *Rowland,* 1 *Show.* 209. [215.] it appeared, that the defendant and plaintiff's wife had reckoned ; that the defendant had borrowed at one time 40*s.*, at another time 40*s.*, and at another time 4*l.* amounting to 8*l.*; and that he promised to pay it. This was holden to be good evidence of *one* promise, but not of *three* promises.

When a party has a remedy of a higher nature, he must found his action thereon ; and *indebitatus assumpsit* cannot be supported where there has been an express contract. 1 *Chitt. Plead.* 95. *Weaver* v. *Boroughs,* 1 *Stra.* 648. In *Bulstrode* v. *Gilburn,* 2 *Stra.* 1027. which was for money had and received, the defendant had entered into articles to account, and it was decided, that *assumpsit* would not lie, because the plaintiff had a remedy of a higher nature. These articles were, indeed, *sealed* ; but surely, at the present day, the omission of a *wafer* cannot destroy the effect of a written stipulation.

The case of *Smith* v. *Allen,* 5 *Day,* 337. decided by this court, in *November,* 1812, cannot be distinguished from the present. It was an action in the common form of an action on a promissory note. The writing declared on was in these words : " Due *John Allen,* 94 dollars, 91 cents, on demand." This certainly contains *no more* evidence of a promise, than the writing under consideration ; but the court sustained the action ; for which I can offer no better reasons than were given by Judge *Smith,* in delivering the opinion of the court. " Where a writing contains nothing more than merely an acknowledgment of a debt due, it does not, in legal construction, import an express promise to pay. From such a writing, it would not appear, that the parties meant it should be paid. Their intention might be, in such case, merely to settle the amount by writing, with a view to some further dealings. But where a writing imports not only a debt due, but an express agree-

*Middlesex,*
*October,*
*1820.*

Hinsdale
*v.*
Eells.

ment to pay, this amounts to an express contract. From the writing in question, it is perfectly manifest, that the debt due was to be *paid on demand*, as fully as if the words, " to be paid," or " I promise to pay," had been inserted next before the words " on demand." But the case of *Shelton* & al. v. *Darling*, 2 *Conn. Rep.* 435. seems to remove all doubt. That was *assumpsit* by the indorsees of a bill of exchange, accepted by the defendant, as agent, in fraud of his principal, though within the scope of his agency. Counts were added for money had and received, &c. But said the late Chief Justice and seven of his brethren, *quorum pars magna fuimus*, " While a party holds an instrument as security for his debt, he cannot resort to the action of *indebitatus assumpsit* for money had and received ; for the express written contract extinguishes the implied one, and the plaintiff is as much precluded from bringing this action against the defendant, as against the *Commission Company*; for they hold a valid instrument to secure the money, which they seek to recover in this action. The plaintiffs, then, cannot be entitled to recover on either of the *indebitatus* counts. They cannot recover on the count for the bill of exchange ; for that was never accepted, by the defendant, in his private capacity."

Having no doubt on this point, I give no opinion on the other.

I advise a new trial.

BRISTOL, J. The declaration contains three counts for money, received by the defendant of the plaintiffs, at different times. The plaintiffs offered in evidence, an acknowledgment, subscribed by the defendant, that he had received the various sums of money, specified in the different counts, at the times stated in the declaration. The defendant claimed, that this testimony was improperly admitted.

It seems an undeniable principle of the common law, that if *A.* lends money to *B.*, at different times, and in different sums, *each* loan of money constitutes a distinct contract, and that the lender may maintain as many suits against the borrower, as there are distinct loans. This principle is too *obvious* to need the aid of any authority. The contract created by each loan, is as distinct from that created by any *other* loan, as it would be, had each loan been separately secured,

by a distinct bond, or promissory note.   If separate suits could
have been brought upon each bond or note, had these securi-
ties been given, it is equally certain, that a distinct suit may
be maintained upon the contract, arising out of each loan,
where no security is taken by the lender..

Although the plaintiffs might have brought separate actions
for each *distinct loan*, they are not compellible to do it, and
thereby subject either themselves, or their adversary, to this
unnecessary expense : they may unite the whole in *one* decla-
ration, by means of different counts ; and where suits are mul-
tiplied unnecessarily, the court may, at their discretion, com-
pel a consolidation, and oblige the offending party, or his at-
torney, to pay the costs.   This is done, not on the ground
that separate suits are *unlawful*, or cannot be maintained, but
on the ground that the plaintiff is attempting to enforce his
rights, in a *manner* which is unnecessary and oppressive.   The
plaintiffs, in the present case, have not been guilty of this op-
pression : and if separate suits *might* have been brought, it
follows, that the present declaration, containing different
counts for distinct loans, may be well sustained.   In this view
of the case, there seems to be no well-founded objection to
the testimony in question.

It is said, that the different loans of money, and the con-
tracts arising out of them, have been " consolidated," by the
writing in question ; and that the action either ought to have
been brought on the *agreement*, or should have been an action
of *indebitatus assumpsit* for the *aggregate* amount of the dif-
ferent loans.   There is no principle of law to warrant this
claim.   It is true, that simple contracts may be *merged*, by
accepting securities of a higher nature ; and unless this is
meant by what the counsel choose to call " *a consolidation
of the different loans*," I know not what is intended.   Thus,
a promissory note, if it is a simple contract, is merged, by
taking a bond, including the contents of such note.   One sim-
ple contract, however, is never *merged*, by the acceptance of
another simple contract.   It may, indeed, operate to suspend
or modify it ; as where a promissory note is taken for goods
sold and delivered, no action can be brought for the goods, till
the note falls due : because the vendor, by taking the note,
has agreed to extend the credit till that time.

*Middlesex,*
October,
1820.

Hinsdale
*v.*
Eells.

It is true, that in *Connecticut*, notes not negotiable, given for value received, have been considered specialties, as much as bonds under seal, or the most solemn instruments. The real question is, whether the writing in question is a specialty, and whether the plaintiffs, by taking it, have merged the original cause of action?

The object of the writing cannot be mistaken. Neither party had any idea of entering into any new contract, or of giving or taking any new security. It seems to me, to be a mere acknowledgment of pre-existing debts, and of the defendant's liability to pay them. It is sufficient, on this point, to observe, that such a writing has never been embraced within the class of specialties, by any practice, or judicial decision: and were it to be so considered, the loosest memorandum, signed by a party, furnishing evidence of a pre-existing debt, would be placed on the same foundation, with the most solemn instruments known to the law. We ought to proceed no further on this road, than former practice, and judicial decisions, require us to travel: and while it is proper, on the one hand, to treat notes for value received, not payable to order, as specialties, it would, on the other, be extremely dangerous to give the same privilege to a writing like the present.

The evidence offered by the defendant, was properly rejected. From the whole evidence, it is apparent, that the defendant lent the plaintiffs his notes, to enable them to raise money at the *Eagle* bank. In consequence of this transaction, the plaintiffs are bound to see that these notes are paid, and *to indemnify* the defendant against them. But the defendant agreed, in consideration of the loan made him by the plaintiffs, that he would repay the money *on demand*. Nothing can be inferred from the testimony offered, that the plaintiffs were bound to wait for their money lent to the defendant, until they had actually taken up and cancelled the notes negotiated at the *Eagle* bank. On the contrary, instead of making this a condition precedent to the plaintiffs' right to reclaim the money lent, *that money* is to be repaid *on demand*, and the defendant consents to trust the plaintiffs' responsibility, to protect him against the payment of the notes. Having consented to this, it is too late for him to ask the court to interfere in his be-

half, and protect him from what, he now considers, the *im-providence* of his own contracts.

BRAINARD and CHAPMAN, Js. were of the same opinion.

HOSMER, Ch. J., being related to one of the parties, gave no opinion.

New trial not to be granted.